Affirmed in Part, Dismissed in Part, and Opinion filed June 19, 2007








Affirmed in
Part, Dismissed in Part, and
Opinion filed June 19, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00165-CV

____________

 

DEEP WATER SLENDER WELLS, LTD.,
JAMES G. WOOD, AND PREDA CONSULTANTS, INC., Appellants

 

V.

 

SHELL INTERNATIONAL EXPLORATION
& PRODUCTION, INC., JIM ADAM, GRAHAM BRANDER, AND MARK LEONARD, Appellees

 



 

On Appeal from the 234th
District Court

Harris County, Texas

Trial Court Cause No. 03-61815

 



 

O P I N I O N








In this business-torts case, we determine the scope and
enforceability of a forum- selection clause.  Two companies and the owner of
their common parent company sued an international exploration and production
company and three of its current or former employees, asserting various tort
claims relating to the defendants= alleged
misappropriation of the plaintiffs= alleged
oilfield-technology trade secrets.  The trial court enforced a forum-selection
clause requiring litigation in a foreign forum and dismissed all of the
claims.  The main issue on appeal is whether the trial court erred in
dismissing all claims under the forum-selection clause.  Concluding the trial
court did not err, we affirm the trial court=s order enforcing
the forum-selection clause.  Because in this order the trial court necessarily
vacated its prior order granting partial summary judgment, the appeal from the
partial summary judgment is moot.

                        I.  Factual and Procedural Background

Appellant James G. Wood is a British citizen whose
permanent residence is on the Isle of Man, though he recently has been working
in Houston, Texas.  Wood is the owner of Preda Consultants, Ltd., an English
company that owns both appellant Preda Consultants, Inc. (APreda@), a Texas
corporation, and appellant Deep Water Slender Wells, Ltd. (ADeep Water@), an English
company.  Appellee Shell International Exploration and Production, Inc. (AShell
International@) is a Delaware corporation with its principal place
of business in Texas.  Appellants/plaintiffs Deep Water, Preda, and Wood (hereinafter collectively ADeep Water Parties@) filed suit in the court below against
appellees/defendants Shell International and its current or former employees 
Jim Adam, Graham Brander, and Mark S. Leonard (hereinafter collectively AShell Parties@).  

In June 1999, Shell International Deepwater Services, B.V.
(AShell Services@), a company
incorporated in The Netherlands, and Deep Water signed a Consulting Agreement
that was effective as of April 5, 1999.  In this Consulting Agreement, the
parties agreed, among other things, as follows:

!       The Aprovision of services@ will be carried out by Deep Water in accordance with the
Consulting Agreement.

!       The Consulting Agreement shall continue in
force until August 30, 1999, provided that any provision of the Consulting
Agreement may continue in effect for the purposes of that provision if that
provision is expressly or by implication intended to remain in force after the
termination of the Consulting Agreement.  








!       As used in the Consulting Agreement, ASERVICES@ means all work to be carried out
by Deep Water as further defined in Section E of the Consulting Agreement.  In
Section E, the parties agreed that the total scope of Athe SERVICES to be provided under
[the Consulting Agreement] and for which [Deep Water] shall be reimbursed in
accordance with the Schedule of Prices is defined in [four attached documents].@

!       In Section E, the parties further agreed
that, in addition to the ASERVICES,@ Deep Water also would perform the
work detailed in three other attached documents (AAdditional Work@).  Although the Additional Work would not be a part of the
ASERVICES under the [Consulting
Agreement]@ and, therefore, Shell Services
would have no ownership rights to the results of the Additional Work, Deep
Water agreed to give access rights to the results of the Additional Work to
each company that signed the form of Confidentiality Agreement attached to and
made a part of the Consulting Agreement.  

!       The Consulting Agreement shall be
governed exclusively by and interpreted in accordance with the law of The
Netherlands, and the parties irrevocably agree that the courts of The Hague,
The Netherlands shall have exclusive jurisdiction to resolve any controversy or
claim of whatever nature arising out of or relating to the Consulting Agreement
or breach thereof.

Deep Water performed the work defined as ASERVICES@ under the
Consulting Agreement, and Shell Services received a report regarding the
results of this work, in which Shell Services had ownership rights.  Deep Water
also performed the Additional Work.  In accordance with the terms of the
Consulting Agreement, Shell Services received a copy of the report reflecting
the results of this work after Shell Services signed the form of
Confidentiality Agreement attached to the Consulting Agreement.  Although not
parties to the Consulting Agreement, BP Exploration Operating Company Limited (ABP@), Den Norske
Stats Oljeselskap A.S. (AStatoil@), and Elf
Exploration Production (AElf@), each signed the
Confidentiality Agreement and also received a copy of the report reflecting the
results of the Additional Work.  In the Confidentiality Agreement, the parties
thereto agreed that the Confidentiality Agreement contains their entire
agreement and supersedes all prior understandings, arrangements, and agreements
among these parties with respect to the subject matter of that agreement.








In their live pleading, the Deep Water Parties make the following allegations:

!         James G. Wood is president and Chief Executive Officer of
Preda and Deep Water.

!         Mark Leonard is president and Chief Executive Officer of Shell
International.

!         During the 1990s, Wood began exploring ways to develop
technology that would permit the economical development of deep water oil and
gas reserves in regions that do not have the meteorological, geographic, and
geological challenges of areas where deep water drilling evolved. Wood formed
Deep Water to develop
a kit that would allow conversion of standard offshore drilling rigs into safe,
economical, and effective deep water drilling platforms.  

!       The Deep Water Parties spent thousands of
engineering hours and tens of thousands of dollars to develop this technology. 


!       In 1999, after the Deep Water Parties had
spent much valuable time and money developing this technology, they had an
opportunity to further develop the technology and to put it to a practical test
in Africa.  

!       AShell International Deepwater Services, B.V., as an
affiliate alter ego and predecessor of Shell International Exploration and
Production, Inc. (AShell@) agreed to work with [the Deep Water Parties] in
the WADO field off the coast of Nigeria to put [the Deep Water Parties=] technology to work.@[1]








!       For the opportunity to work on the WADO field
project, Shell International[2]
and other companies agreed that they would keep all information provided by
Deep Water confidential.  These parties defined the confidential information
using the definition of ASlender  Well Technology@ that is also set forth and used in
the Deep Water Parties= petition.  This definition is the
same definition of the confidential ASlender Well Technology@ that is used in the Confidentiality Agreement.

!       Under the Confidentiality Agreement and other
oral agreements with Shell International and the individual defendants, the
Deep Water  Parties continued to move on putting this technology to work.  The
parties all agreed that the Deep Water Parties would own this technology and
have the incentive of benefitting economically from its development.  For its
part, Shell International would benefit from the use of the Deep Water Parties= engineering expertise and licensing
from the Deep Water Parties of their technology for use in the economical
development of Shell International=s reserves.  

!       The
Deep Water Parties and Shell International entered into a multi-year
partnership to develop this technology under this joint and mutual understanding.  This partnership continued from 1999 until 2002.
During this period the parties shared a confidential relationship.

!         Without the knowledge of the Deep Water Parties, this
relationship changed when Shell International assigned oversight of this joint
venture to defendant Jim Adam, an employee of Shell International, and when the
geographic location of Shell International=s
development team shifted to Houston. Adam induced the Deep Water Parties to
divulge this technology to Shell International, intending to convert it to
Shell International=s use.  Adam and Shell International continued the
pretense by express agreement and course of dealings that Shell International
would not convert this technology to its own use.

!         Defendant Graham Brander, in the course and scope of his
employment with Shell International, converted the Deep Water Parties= confidential information, trade secrets, and
intellectual property and published it in a trade journal.  








!         The Shell Parties=
tortious acts culminated in their production of the Deep Water Parties= kit, now in use on a rig off the coast of Egypt,
without paying for the use of the kit.  Shell International also intends to
build or is in the process of building additional conversion kits using the
technology stolen from the Deep Water Parties.

!         Defendant Leonard, a Shell International employee and vice
principal set out to defame Wood and to tortiously interfere with the Deep
Water Parties= relationships with third parties.  Although the Shell
Parties knew that the opposite was true, Leonard and Shell International
portrayed Wood in public Aas a flake, or worse, a dishonest person or criminal
who was passing off Shell=s technology as his own.@  Shell International tortiously interfered with the Deep Water Parties= business relationships and prospective business
relationships with Cameron Iron Works and British Petroleum. 

!         Shell International
committed fraud, breaches of fiduciary duty, conversion of intellectual
property, theft of trade secrets, and tortious interference with the Deep Water
Parties= business relationships and
prospective business relationships.  

The
Shell Parties filed a motion to dismiss, seeking to enforce the forum-selection
clause contained in the Consulting Agreement.  Originally, the trial court
denied this motion.  The Shell Parties then filed a motion to reconsider this
ruling.  The Shell Parties also filed three motions for partial summary
judgment, asserting (1) the alleged trade secrets are not trade secrets as a
matter of law, (2) Wood=s and Preda=s misappropriation-of-trade-secrets claims fail as a matter
of law because they do not own the alleged trade secrets as a matter of law,
and (3) one of the Deep Water Parties= theories for tortious-interference
liability fails as a matter of law.








On November
16, 2005 at 2:52 p.m., the trial court made various evidentiary rulings and
decided three motions for partial summary judgment, granting some of the relief
requested and denying some of the relief requested (hereinafter APartial Summary Judgment@).  Twenty-four minutes later the
trial court granted the Shell Parties= motion for reconsideration Ain all things@ and dismissed all claims and all
parties so that the Deep Water Parties could pursue all these claims in the
courts of The Hague.  The trial court noted in this order that the Shell
Parties had consented to the jurisdiction of the courts of The Hague for the
purposes of any suit the Deep Water Parties might file there regarding the
events and transactions made the basis of this suit.  The trial court later
denied the Deep Water Parties= motion to vacate this order.

                                                       II. 
Issues Presented

On
appeal, the Deep Water Parties raise a number of challenges to the enforcement
of the forum-selection clause.  They do not, however, argue that the
enforcement of the forum-selection clause as to Wood and Preda fails because
these parties did not sign the Consulting Agreement; therefore, this court need
not address any issues in this regard.  Under their first issue, the Deep Water
Parties argue the trial court erred in dismissing the claims based on the
forum-selection clause for the following reasons:

(1)       As a matter of law, the forum-selection clause does not
govern the separate Confidentiality Agreement that contains no forum-selection
clause, addresses a different subject, and is between different parties.

(2)       While the Deep Water Parties= claims relate to the Confidentiality Agreement, they do not relate to
the Consulting Agreement that contains the forum-selection clause.

(3)       The Consulting Agreement did not involve the technology
involved in the dispute in this case, which was developed after the Consulting
Agreement terminated.

(4)       All the Shell Parties were not parties to the Consulting
Agreement and did not prove that they were Atransaction
participants@ entitled to enforce the forum-selection clause.  

(5)       The trial court erred in enforcing the forum-selection clause
because the Shell Parties did not prove that the courts of The Hague would
enforce this forum-selection clause as to these parties.

(6)       The trial court abused its discretion in dismissing the
claims because Texas public policy strongly favors the litigation of this
dispute in Texas.

(7)       The trial court erred in sustaining the Shell Parties= objections to parts of Wood=s affidavit.

Under
their second issue, the Deep Water Parties argue that, even if the
forum-selection clause is enforceable, this court should reverse the trial
court=s Partial Summary Judgment because
there is a fact issue as to the ownership of the alleged trade secrets.  








                                                   III.  Standard of Review

A motion
to dismiss is the proper procedural mechanism for enforcing a forum‑selection
clause that a party to the agreement has violated in filing suit.  See In re
AIU Ins. Co., 148 S.W.3d 109, 111B21 (Tex. 2004);  Phoenix Network
Techs. (Europe) Ltd. v. Neon Sys., Inc., 177 S.W.3d 605, 610 (Tex. App.CHouston [1st Dist.] 2005, no pet.). 
We review the trial court=s granting of such a motion for an abuse of discretion.  See
Phoenix Network Techs. (Europe) Ltd., 177 S.W.3d at 610.  However, to the
extent that our review involves the construction or interpretation of an
unambiguous contract, the standard of review is de novo.  See id.  

                                                                 IV. Analysis








Until recently, Texas courts and federal courts used
different analyses to determine the enforceability of mandatory forum-selection
clauses.[3]
See Phoenix Network Techs. (Europe), Ltd., 177 S.W.3d at 611B14.  However, the
Supreme Court of Texas recently adopted the federal courts= analysis of these
clauses.  See Michiana Easy Livin= Country, Inc. v.
Holten, 168 S.W.3d 777, 793 (Tex. 2005); In re Automated Collection Tech.,
Inc., 156 S.W.3d 557, 558B59 (Tex. 2004); In re AIU Ins. Co.,
148 S.W.3d 109, 111B14 (Tex. 2004); Phoenix Network Techs.
(Europe), Ltd., 177 S.W.3d at 614.  Under the unambiguous language of the
Consulting Agreement, Deep
Water and Shell Services agreed that the courts of The Hague shall have
exclusive jurisdiction to resolve any controversy or claim of whatever nature
arising out of or relating to the Consulting Agreement.  This is a mandatory
forum-selection clause.  In deciding whether to enforce a mandatory forum-selection
clause, courts must determine whether the claims in the case at hand fall
within the scope of the forum-selection clause and whether the court should
enforce the clause.  In addition to resolving issues of scope and
enforceability, courts also may have to decide issues as to whether
nonsignatories to the contract can enforce the forum-selection clause contained
therein.  In this case, the Deep Water Parties have asserted arguments in all
three of these categories.

A.      Did the trial court err in
determining that the claims in this case fall within the scope of the forum-selection
clause?

When a party seeks to enforce a mandatory forum-selection
clause, a court must determine whether the claims in question fall within the
scope of that clause. See Marinchance Shipping, Ltd. v. Sebastian, 143
F.3d 216, 221B22 (5th Cir. 1998).    The court bases this
determination on the language of the clause and the nature of the claims that
are allegedly subject to the clause.  See id.  If the claims fall within
the scope of the clause, the court must determine whether to enforce the
clause.








On appeal, the Deep Water Parties asset the trial court
erred in concluding that their claims fall within the scope of the forum-selection clause in the
Consulting Agreement.  This clause covers Aany controversy or claim of whatever
nature arising out of or relating to [the Consulting Agreement] or breach
thereof.@  The Deep Water Parties argue that
their claims do not arise out of or relate to the Consulting Agreement,
although they acknowledge that their claims relate to the Confidentiality
Agreement.  The Deep Water Parties assert claims for fraud, breaches of fiduciary duty, conversion of
intellectual property, theft of trade secrets, and tortious interference with
the Deep Water Parties= business relationships and prospective business
relationships.  Although the Deep Water Parties do not assert claims for breach
of contract, they base their tort claims in part on an alleged tortious breach
of an alleged Aconfidential relationship@ arising from an alleged multi-year partnership between the Deep
Water Parties and Shell International to develop the ASlender Well Technology.@  The Deep Water Parties pleaded that
this partnership started in 1999, when, for the opportunity to work on the WADO
field project, Shell International agreed that it would keep confidential all
information provided by Deep Water.  Although the Deep Water Parties= petition does not
contain a specific reference to either the Consulting Agreement or the
Confidentiality Agreement, the definition of the technology which Shell
International allegedly promised to keep confidential is the same definition
used in the Confidentiality Agreement.  It is clear from the petition that the
Deep Water Parties base their
tort claims in part on an alleged Aconfidential relationship@ arising from an alleged multi-year
partnership that began when the parties signed the Confidentiality Agreement.[4] 
On appeal, the Deep Water Parties assert that their claims do not relate to the
Consulting Agreement; however, the Deep Water Parties concede that Athe Confidentiality Agreement relates
to [the Deep Water Parties=] claims because it evidences the confidential relationship
that developed between [the Deep Water Parties] and [the Shell Parties]. . . .@    








The trial court found that the Confidentiality Agreement is
part of the Consulting Agreement, and the parties devote much of their
appellate briefing to whether this finding is correct.  The Deep Water Parties
assert the Confidentiality Agreement is separate from and not a part of the
Consulting Agreement.  For the purposes of our review, we presume that the
Confidentiality Agreement was entered into after the Consulting Agreement and
is not a part of the Consulting Agreement.  However, even operating under this
presumption, the uncontroverted evidence shows that the form of the
Confidentiality Agreement was incorporated into and formed part of the
Consulting Agreement.  Furthermore, the Consulting Agreement addressed the
Additional Work to be performed by Deep Water, stated that Shell Services would
have no ownership rights to the results of this work, and provided that Shell
Services could access these results upon its signing of the form of the Confidentiality
Agreement.  When Deep Water performed the Additional Work and provided the
results of this work to Shell Services after Shell Services and Deep Water
signed the Confidentiality Agreement, the parties were acting pursuant to the
Consulting Agreement.  The Deep Water Parties= claims are based
on subsequent conduct that allegedly violated a purported confidential
relationship that started when Shell Services and Deep Water signed the
Confidentiality Agreement pursuant to the terms of the Consulting Agreement. 
We conclude the trial court did not err in determining that the Deep Water
Parties= claims arise out
of or relate to the Consulting Agreement.[5] 
See Marinchance Shipping, Ltd., 143 F.3d at 221B23 (holding trial
court did not err in concluding that tort claims arose out of or by virtue of
the contract with the forum-selection clause); Von Graffenreid v. Craig,
246 F. Supp. 2d 553, 557, 559B60 (N.D. Tex. 2003) (holding that tort
claim arose out of or related to agreement containing forum-selection clause
and was therefore within the clause=s scope).      








In support of their argument that the Consulting Agreement
does not relate to the Confidentiality Agreement, the Deep Water Parties assert
that the Consulting Agreement related to the work defined as ASERVICES@ under the
Consulting Agreement, rather than the Additional Work, which the Deep Water
Parties claim was Aexpressly excluded from the terms
of the Consulting Contract.@  Under the unambiguous language of the
Consulting Agreement, Deep Water would perform certain services as to which
Shell Services would own the results, and Deep Water also would perform other
services, as to which Deep Water would own the results but Shell Services could
access the results upon signing the form Confidentiality Agreement attached to
and contained in the Consulting Agreement.  To distinguish the two different
categories of work, the Consulting Agreement refers to the former as ASERVICES@ and the latter as
AAdditional Work.@  

The Deep Water Parties rely on two parts of the Consulting
Agreement in which the parties state that the former services are the ASERVICES to be
provided under this Contract@ and that the latter services Ashall not form part [sic] of the
SERVICES under the Contract.@ In the Consulting Agreement the parties state that ASERVICES shall mean all work to be
carried out and consultancy and associated services to be performed by [Deep
Water] as further defined in Section E: Scope of Work.@  In Section E, the parties detail
the work that falls within the scope of the ASERVICES,@ and Deep Water also agrees to
perform the Additional Work.  At the beginning of the Consulting Agreement, the
parties agree that Athe provision of services shall be carried out by [Deep
Water] in accordance with the following documents [which includes Section E].@  Although the Additional Work may
not be part of the ASERVICES@ provided under the Consulting Agreement and though many of
the terms of the Consulting Agreement apply only to the ASERVICES,@ Deep Water unambiguously promised to
perform the Additional Work in Section E of the Consulting Agreement.  The
Shell Parties argue that this work directly relates to the claims asserted by
the Deep Water Parties because it involves technology and alleged trade secrets
that the Deep Water Parties claim have been misappropriated by the Shell
Parties.  The Deep Water Parties disagree with this argument.  However, even if
this argument were incorrect, Shell Services signed the form of Confidentiality
Agreement contained in the Consulting Agreement so that it could obtain the
results of the Additional Work that Deep Water owned, all as agreed in the
Consulting Agreement.  Because the Deep Water Parties allege that these actions
gave rise to a partnership and a confidential relationship whose later alleged
breach gave rise to their tort claims, the trial court did not err in
concluding that these claims arise out of or relate to the Consulting
Agreement.  For these reasons, we find unconvincing the Deep Water Parties= argument based on the definition of
the term ASERVICES.@








The Deep
Water Parties assert that, under the merger clause in the Confidentiality
Agreement, the Confidentiality Agreement supersedes Deep Water=s prior agreement in the Consulting
Agreement to litigate claims in The Hague.  One of the premises of this
argument is that the Confidentiality Agreement took effect after the Consulting
Agreement.  The Consulting Agreement was signed in June 1999, and made
effective as of April 5, 1999.  The Deep Water Parties assert that the
Confidentiality Agreement was signed at a later date; they indicate that all
the signatories had signed the Confidentiality Agreement by May 27, 1999.  Our
record does not contain an executed copy of the Confidentiality Agreement.  The
copy of the Confidentiality Agreement in our record (1) is attached to the
Consulting Agreement, (2) is signed only by Deep Water, and (3) contains an
empty blank space for the date in 1999 on which the Confidentiality Agreement
is to be effective.  A letter in our record indicates all parties to the
Confidentiality Agreement had signed it by May 27, 1999; however,  nothing in
our record reflects the effective date of the Confidentiality Agreement.  If
the final, executed Confidentiality Agreement were made effective on or before
April 5, 1999, then the Deep Water Parties= argument would be based on an
incorrect factual premise.  But even presuming for the sake of argument that
the Confidentiality Agreement took effect after the Consulting Agreement, their
argument still lacks merit. 








In the
merger clause of the Confidentiality Agreement, Shell Services, Deep Water, BP,
Statoil, and Elf agreed that the Confidentiality Agreement contains their
entire agreement with respect to the subject matter of that agreement, and they
agreed that the Confidentiality Agreement supersedes all prior agreements
between Deep Water and the other parties regarding the subject matter of the
Confidentiality Agreement. Enforcement of the agreement between Deep Water and
Shell Services to litigate all disputes relating to the Consulting Agreement in
The Hague does not conflict with the terms of the Confidentiality Agreement
regarding the agreement of the parties thereto as to the subject matter of the
Confidentiality Agreement.  There need not be a forum-selection clause in the
Confidentiality Agreement for disputes regarding that agreement to relate to
the Consulting Agreement.  Therefore, the Deep Water Parties= argument
regarding the merger clause in the Confidentiality Agreement lacks merit.  

The Deep Water Parties also assert that the Consulting
Agreement ended on August 30, 1999.  However, the part of the Consulting
Agreement on which the Deep Water Parties rely for this proposition does not
state that the agreement ends on August 30, 1999.  Rather, it states as
follows:

This Contract . . . shall continue
in force until 30 August 1999 . . . always provided that in the event of
such expiry or termination this Contract or any provision thereof may continue
to remain effective for the purposes of such provision which is expressly or by
implication intended to come into or remain in force on or after such expiry or
termination.

Under
the unambiguous language of the Consulting Agreement, the only parts of that
agreement that expire on August 30, 1999 are the parts that are not expressly
or impliedly intended to remain in force after that date.  The forum-selection
clause addresses the forum in which the parties will litigate any future
disputes arising out of or relating to the Consulting Agreement.  Therefore,
the parties intended and impliedly agreed for this clause to remain in force
after August 30, 1999.  See Texas Source Group, Inc. v. CCH, Inc.,
967 F. Supp. 234, 238B39 (S.D. Tex. 1997) (enforcing
forum-selection clause even though prior agreement that contained the
forum-selection clause had expired by its own terms before the lawsuit was
filed); Strata Heights Int=l Corp. v.
Petroleo Brasilero, S.A., No. 02-20645, 2003 WL 21145663, at *1, *6B7 (5th Cir. Apr.
28, 2003) (not designated for publication) (same).  Therefore, the Deep Water
Parties are incorrect when they assert that the Consulting Agreement expired on
August 30, 1999.  








The Deep Water Parties also assert that their claims do not
relate to the Consulting Agreement because they have not sued Shell Services or
any of its employees.  This argument fails based on the Deep Water Parties= allegation in
their petition that Shell Services is the alter ego of Shell International. 
If, as pleaded by the Deep Water Parties, Shell Services is an alter ego of
Shell International, then the separateness between these corporations would
have ceased, and the courts would view them as a single corporation.[6] 
See, e.g., Mosqueda v. G & H Diversified Mfg., Inc., CS.W.3dC, C, 2007 WL 258154,
at *9 (Tex. App.CHouston [14th Dist.] Jan. 31, 2007, pet.
filed).  Therefore, under the Deep Water Parties= petition, Shell
International and Shell Services are the same corporation, and the Deep Water
Parties have sued Shell Services and its current or former employees. 

For these reasons, we are unpersuaded by the Deep Water
Parties= arguments that
their claims do not fall within the scope of the forum-selection clause of the
Consulting Agreement.[7]

B.      Did the
trial court err in enforcing the forum-selection clause because the interests
of the public and the witnesses strongly favor litigating this case in Texas?








The Deep Water Parties also assert that the trial court
erred in enforcing the forum-selection clause because the interests of the
witnesses and the public strongly favor litigating these claims in Texas rather
than in the forum selected in the Consulting Agreement.  The Deep Water Parties
base this argument on the prior Texas legal standard for deciding whether to
enforce a mandatory forum-selection clause.  See, e.g., Holeman v. Nat=l Bus. Institute,
Inc.,
94 S.W.3d 91, 101 (Tex. App.CHouston [14th Dist.] 2002, pet. denied). 
However, as noted above, the Supreme Court of Texas recently abandoned this
legal standard for analyzing mandatory forum-selection clauses, opting instead
to adopt the standard employed by federal courts.  Therefore, the Deep Water
Parties= argument is
premised on the wrong legal standard.  See Michiana Easy Livin= Country, Inc., 168 S.W.3d at
793; In re Automated Collection Techs., Inc., 156 S.W.3d at 558B59.  

Under the applicable legal standard, the trial court
presumes that a mandatory forum-selection clause is valid and enforceable.   See
 M/S Bremen v. Zapata Off‑Shore Co., 407 U.S. 1, 10, 92 S. Ct.
1907, 1913,  32 L.Ed.2d 513 (1972); In re AIU Ins. Co., 148 S.W.3d at
111B12. The trial
court gives such a clause full effect absent a strong showing by the resisting
party that the court should set aside the clause because (1) the clause is
invalid based on such reasons as fraud, undue influence, or overweening
bargaining power; or (2) enforcement would be unreasonable and unjust.  See  M/S
Bremen, 407 U.S. at 10B15, 92 S. Ct. at 1913B16;  In re AIU
Ins. Co., 148 S.W.3d at 111B12.  Enforcement of a forum-selection
clause would be unreasonable and unjust if (1) enforcement of the clause would
contravene a strong public policy of the forum in which suit was filed or (2)
the balance of convenience is strongly in favor of litigation in the forum in
which suit was filed, and litigation in the forum identified in the clause
would be so manifestly and gravely inconvenient to the resisting party that the
resisting party effectively would be deprived of a meaningful day in court.  See
 M/S Bremen, 407 U.S. at 15B19, 92 S. Ct. at
1916B18; In re AIU
Ins. Co., 148 S.W.3d at 111B12.  The Deep Water Parties have not
argued or presented evidence showing that litigation in The Hague would be so
manifestly and gravely inconvenient to the Deep Water Parties that they
effectively would be deprived of a meaningful day in court. We conclude that
the trial court did not abuse its discretion in impliedly determining that the
Deep Water Parties failed to make the required strong showing.  See Phoenix Network Techs. (Europe) Ltd., 177 S.W.3d at 620B21 (concluding party was bound by
forum-selection clause because it had not made this required showing).  








C.      Did the trial court err in
concluding that the Shell Parties could enforce the forum-selection clause?

Both in their motion to dismiss and in their motion for
reconsideration of the motion to dismiss, the Shell Parties asserted that they
can enforce the forum-selection clause even though they did not sign the
Consulting Agreement (1) because they are Atransaction
participants@[8] and (2) under
principles of equitable estoppel.  The trial court dismissed based on both
theories.[9]


Neither the Supreme Court of Texas nor this court have
addressed whether it is proper to use the transaction-participant analysis as a
theory for allowing a nonsignatory to enforce a forum-selection clause. 
However, we need not address this issue today because the trial court=s ruling is
sustainable based on equitable estoppel.  








The First Court of Appeals has determined that the
equitable-estoppel theories regarding nonsignatories to arbitration agreements
also should be applied to forum-selection clauses that do not involve
arbitration.[10] 
See Phoenix
Network Techs. (Europe) Ltd., 177 S.W.3d at 622B24.  We agree.  The Supreme Court of the
United States has stated that an arbitration agreement is a specialized kind of
forum‑selection clause.  See Rodriguez de Quijas v. Shearson/American
Exp., Inc., 490 U.S. 477, 482B83, 109 S. Ct.
1917, 1921, 104 L.Ed.2d 526 (1989).  Likewise, the Supreme Court of Texas has
described an arbitration agreement as Aanother type of
forum‑selection clause@ and has stated that there is no
meaningful distinction between a non-arbitration forum‑selection clause
and an arbitration clause.   See In re AIU Ins. Co., 148 S.W.3d at 115B16.  Moreover, the
Supreme Court of Texas has applied precedents involving waiver of arbitration
and availability of mandamus to enforce a right to arbitration in determining
the same issues as to a non-arbitration forum-selection clause.  See id.
at 115B16, 120B21.  We see no
reason that these courts would not also apply arbitration law=s equitable‑estoppel
theories for enforcement by a nonsignatory to non-arbitration forum‑selection
clauses. See Phoenix
Network Techs. (Europe) Ltd., 177 S.W.3d at 622B24.  








Courts should apply equitable estoppel when a signatory to
the contract containing the forum-selection clause raises allegations of
substantially interdependent and concerted misconduct by both nonsignatories
and one or more signatories to the contract.  See Meyer v. WMCO‑GP,
L.L.C., 211 S.W.3d 302, 306 (Tex. 2006); Grigson v. Creative Artists
Agency, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000).  In all substantial
respects, the Deep Water Parties do not draw distinctions among themselves in
the allegations and claims they make against the Shell Parties.  Deep Water is
a signatory to the Consulting Agreement, and the Deep Water Parties have not
asserted that the Shell Parties cannot enforce the forum-selection clause
because Wood and Preda are nonsignatories.  Under the allegations raised by the
Deep Water Parties, Shell International is a signatory because (as alleged by
the Deep Water Parties) it is the alter ego of Shell Services. The Deep Water
Parties assert that this signatory and the individual defendants engaged in
substantially interdependent and concerted tortious conduct with the intent to
defraud the Deep Water Parties, misappropriate their trade secrets, and cause
them substantial injury.[11] 
Therefore, the trial court did not abuse its discretion by concluding that all
the Shell Parties can enforce the forum-selection clause based on principles of
equitable estoppel.  See Hill v. G E Power Sys., Inc., 282 F.3d 343, 349
(5th Cir. 2002) (concluding that nonsignatory would be able to enforce
arbitration clause because plaintiff alleged concerted action by the defendants
to misappropriate trade secrets and commit fraud, although appellate court
deferred to trial court=s discretion to nevertheless not enforce
arbitration as to nonsignatory); In re EGL Eagle Global Logistics, L.P.,
89 S.W.3d 761, 765 (Tex. App.CHouston [1st Dist.] 2002, orig. proceeding
[mand. denied]) (holding that nonsignatory current employer could enforce
arbitration clause because signatory former employer alleged concerted action
by current employer and signatory employee to misappropriate former employer=s trade secrets). 

D.      Did the Shell Parties have
to prove that the courts of The Hague recognize the validity of forum-selection
clauses such as the one at issue in this case?








On appeal, the Deep Water Parties assert that, to enforce
the forum-selection clause, the Shell Parties were required to prove that the
courts of The Hague recognize the validity of forum-selection clauses such as
the one at issue in this case.  In fact, the Deep Water Parties go further and
assert the Shell Parties had to prove that the courts of The Hague would allow
the Shell Parties to enforce this specific forum-selection clause.  The only
legal authority the Deep Water Parties cite to support this argument is an
obiter dictum from this court in a case that predates the Texas Supreme Court=s adoption of the
federal forum-selection-clause analysis.  See Mabon Ltd. v. Afri-Carib
Enters., Inc., 29 S.W.3d 291, 296B98 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  Under
the newly adopted federal analysis, the Shell Parties do not have to prove that
(1) courts in The Hague recognize the validity of forum-selection clauses such as
the one at issue in this case or (2) courts in The Hague would allow the Shell Parties to enforce this
specific forum-selection clause. See Phoenix Network Techs. (Europe), Ltd., 177 S.W.3d at 618
(holding that under federal analysis party invoking forum-selection clause need
not show that forum selected recognizes the validity of forum-selection
clauses).

Finding no merit in any of the arguments presented under
the first issue, we overrule this issue.[12] 


E.      Are all issues regarding
the trial court=s Partial Summary Judgment moot?








In their second issue, the Deep Water Parties assert the
trial court erred in granting the Partial Summary Judgment that it signed
shortly before it signed the order dismissing all claims based on the
forum-selection clause.  A dismissal of all claims to enforce a clause
requiring litigation in another forum is a determination that the merits of the
claims should be determined elsewhere; therefore, enforcement of such a
forum-selection clause is a nonmerits basis for dismissal.  See Sinochem
Int=l Co. Ltd. v. Malaysia Int=l Shipping Corp., C U.S. C, C, 127 S. Ct. 1184,
1192B94, 167 L.Ed.2d 15
(2007) (holding that forum non conveniens was nonmerits basis for dismissal
because it was a determination that the merits of the claims should be
determined elsewhere rather than a decision regarding substantive law); Sucampo
Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 548B50 (4th Cir. 2006)
(holding that dismissal enforcing forum-selection clause requiring litigation
in Japan was not a dismissal on the merits).  In its order dismissing all
claims based on the forum-selection clause, the trial court explicitly stated
that its order is final and disposes of all claims and parties.  We conclude
that this order necessarily vacated the trial court=s prior Partial
Summary Judgment because a dismissal based on a forum-selection clause is
inconsistent with a ruling on the merits.  See Sucampo Pharms., Inc.,
471 F.3d at 548B50; Kirby v. SBC Servs., Inc., 391
F. Supp. 2d 445, 451B52 (N.D. Tex. 2005) (giving effect to part
of Texas state court order that dismissed on nonmerits basisClack of
subject-matter jurisdictionCand refusing to give effect to part of
order that granted summary judgment on the merits because that portion was
necessarily nullified by the nonmerits dismissal); Quanaim v. Frasco Rest.
& Catering, 17 S.W.3d 30, 39B40 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied) (holding that second judgment vacated first judgment
with which second judgment was inconsistent, even though trial court did not
refer to first judgment or expressly state an intention to vacate the prior
judgment in second judgment ); Ho v. Univ. of Tex. at Arlington, 984
S.W.2d 672, 680 (Tex. App.CAmarillo 1998, pet. denied) (holding that
terms of judgment disposing of all parties and claims necessarily vacates prior
inconsistent interlocutory order, even though trial court did not refer to prior
order or expressly state an intention to vacate the prior order in second
judgment); Dickson & Assocs. v. Brady, 530 S.W.2d 886, 887 (Tex.
Civ. App.CHouston [1st Dist.] 1975, no writ) (holding  that
subsequent order dismissing whole case for want of prosecution necessarily
vacated prior interlocutory summary judgment even though the trial court did
not refer to the prior judgment in the dismissal order).  Therefore, the second
issue is moot because the trial court effectively vacated the Partial Summary
Judgment in its order dismissing the case and enforcing the forum-selection
clause.  To the extent the Deep Water Parties appeal this Partial Summary
Judgment, we hold the Partial Summary Judgment has been vacated, and we dismiss
as moot their appeal of it.  

                                                              V. Conclusion








The Deep Water Parties= claims arise out
of or relate to the Consulting Agreement. The Deep Water Parties did not make
the requisite strong showing in the trial court that the forum-selection clause
should be set aside because (1) the clause is invalid based on such reasons as
fraud, undue influence, or overweening bargaining power; or (2) enforcement
would be unreasonable and unjust.  The trial court did not abuse its discretion
by concluding that all the Shell Parties can enforce the forum-selection clause
based on equitable estoppel.  The Shell Parties  are not required to prove that (1) the courts of The
Hague recognize
the validity of forum-selection clauses such as the one at issue in this case or (2) the courts of The Hague would
enforce this specific forum-selection clause.  Because the trial court effectively vacated its
Partial Summary Judgment by dismissing all claims to enforce the
forum-selection clause, this court lacks jurisdiction over the Deep Water
Parties= appeal from the
trial court=s Partial Summary Judgment.  Accordingly, we affirm
the trial court=s order enforcing the forum-selection
clause and dismiss as moot the appeal from the trial court=s vacated Partial
Summary Judgment.

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

Judgment rendered
and Opinion filed June 19, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman.









[1]  Emphasis added.





[2] In the relevant part of the petition containing this
allegation, the Deep Water Parties refer to AShell.@  On Page 2 of the petition, the Deep Water Parties
state that AShell Deepwater@ or
AShell@ will be the
defined term in the petition for Shell International Exploration and
Production, Inc.  As reflected in the previous item in this list, the Deep
Water Parties later appear to state that AShell@ also will be a defined term for AShell International Deepwater Services, B.V., as an
affiliate alter ego and predecessor of Shell International Exploration and
Production, Inc.@  Given the allegation that these two entities are
alter egos, there might be a reasonable basis for the Deep Water Parties= using the same defined term for both companies. 
Nonetheless, at oral argument, the Deep Water Parties asserted that the second
defined term for AShell@ includes only
Shell International.  If this is correct, then in this item, the Deep Water
Parties are alleging that Shell International entered into the contract in
question and agreed to keep the information confidential.  The allegation in
this item may also reflect the Deep Water Parties= argument that Shell International is a party to the Confidentiality
Agreement based on a clause therein stating that the named companies sign on
behalf of their affiliated companies.  We presume in our analysis that AShell@ as used in the
petition refers to Shell International; however, given the Deep Water Parties= allegation that the two Shell entities are alter
egos, it does not matter which interpretation of this defined term is used.





[3]  As used in this opinion, a Amandatory forum-selection clause@ is a contractual provision that requires certain
claims to be decided in a forum or forums other than the forum in which the
claims have been filed.  





[4]  On appeal, the Deep Water Parties assert that this
court must construe the allegations in their petition as favorably as possible,
and they rely on Pozero v. Alfa Travel, Inc., 856 S.W.2d 243, 245 (Tex.
App.CSan Antonio 1993, no writ).  Because no special
exceptions were sustained against the petition, this court must liberally
construe the petition to contain any claims that reasonably may be inferred
from the specific language used in the petition, even if the petition fails to
state all of the elements of that claim.  SmithKline Beecham Corp. v. Doe,
903 S.W.2d 347, 354B55 (Tex.1995).  Nonetheless, we cannot use a liberal
construction of the petition as a license to read into the petition a claim
that it does not contain.  See San Saba Energy, L.P. v. Crawford, 171
S.W.3d 323, 336 (Tex. App.CHouston [14th
Dist.] 2005, no pet).  The petition must give fair notice of the claims being
asserted, and, if we cannot reasonably infer that the petition contains a
claim, then we must conclude the petition does not contain this claim, even
under our liberal construction.  See SmithKline Beecham Corp., 903
S.W.2d at 354B55.  We respectfully disagree with the different legal
standard stated by the Pozero court.  See Pozero v. Alfa
Travel, Inc., 856 S.W.2d 243, 245 (Tex. App.CSan Antonio 1993, no writ).  The Pozero court appeared to
strictly construe the forum-selection clause before it, and its analysis and
result are incompatible with the current analysis adopted by the Supreme Court
of Texas.  Compare  In re AIU Ins. Co., 148 S.W.3d at 111B14, with Pozero, 856 S.W.2d at 245.





[5]  The Deep Water Parties assert that a forum-selection
clause applies only to the construction of rights and liabilities under the
contract in which the clause is found, citing Busse v. Pacific Cattle
Feeding Fund #1, Ltd., 896 S.W.2d 807, 812B13 (Tex. App.CTexarkana 1995, writ denied).  Busse predates
the Texas Supreme Court=s adoption of the federal analysis for forum-selection
clauses, and Busse involved a narrow forum-selection clause that covered
only the construction of the parties=
rights and obligations under the contract in which the clause was contained.  Busse
v. Pacific Cattle Feeding Fund #1, Ltd., 896 S.W.2d 807, 812B13 (Tex. App.CTexarkana
1995, writ denied).  Busse is not on point.





[6]  The Deep Water Parties argue that the analysis is
different because they have alleged that Shell Services is the alter ego of
Shell International instead of alleging that Shell International is the alter
ego of Shell Services.  We disagree.  If either allegation is correct, then the
two companies are treated as one.





[7]  The Deep Water Parties also assert that the trial
court=s holding conflicts with Hooks Industrial, Inc. v.
Fairmont Supply Co., No. 14-00-00062-CV, 2001 WL 395341 (Tex. App.CHouston [14th Dist.] Apr. 19, 2001, pet. denied) (not
designated for publication).  This opinion is not designated for publication
and has no precedential value.  Tex. R.
App. P. 47.7.  In addition, this opinion applied Pennsylvania law to a
narrow forum-selection clause that required claims for Abreach of this contract@ to be asserted in Pennsylvania courts. Hooks Indus., Inc. v.
Fairmont Supply Co., No. 14-00-00062-CV, 2001 WL 395341, at *2 (Tex. App.CHouston [14th Dist.] Apr. 19, 2001, pet. denied) (not
designated for publication).  Because the forum-selection clause was narrow and
was included only in terms and conditions applicable to sales that were not the
basis of the lawsuit in question, this court held that the forum-selection
clause did not cover the claims, even though the terms and conditions were
contained in an exhibit attached to the contract that the plaintiff alleged was
breached.  Id. at *2B3.  The decision
in Hooks Industrial does not change the analysis in this case.





[8]  See Manetti-Farrow, Inc. v. Gucci Am., Inc.,
858 F.2d 509, 514 n. 5 (9th Cir.1988) (allowing nonsignatories to enforce
clause if they are Atransaction participants@ because the alleged conduct of the nonparties is so closely related to
the contractual relationship that the forum-selection clause applies to all
defendants); Accelerated Christian Educ., Inc. v. Oracle Corp., 925
S.W.2d 66, 75 (Tex.
App.CDallas 1996, no writ) (adopting
transaction-participant analysis).  





[9]  The trial court stated in its order that the Shell
Parties are Atransaction participants@ and did not specifically address equitable estoppel.  Nonetheless, the
court stated that the Shell Parties=
motion for reconsideration was Ain all things
GRANTED@ and one of the Athings@ in the motion was the assertion that the Shell
Parties could enforce the forum-selection clause based on equitable estoppel. See
Kanetzky v. Murphy, 862 S.W.2d 653, 657 (Tex. App.CAustin 1993, no writ) (concluding that order granting
motion Ain all things@
granted everything asserted in motion, even those things not expressly stated
in the order); see also Grand Prairie Indep. Sch. Dist. v. Southern Parts
Imports, Inc., No. 05-90-00424-CV, 1992 WL 231822, at *8 (Tex. App.CDallas Nov. 12, 1991, no writ) (not designated for
publication) (stating that court=s
granting of motion Ain all things@
constitutes approval by the court of everything contained in the motion). 
Furthermore, even if the trial court had not dismissed based in part on the
equitable-estoppel theory, this court still would be able to affirm the trial
court=s order based on this theory because the Shell Parties
presented it to the trial court in their motions.  See Cincinnati Life Ins.
Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996).  





[10]  The Deep Water Parties argue on appeal that
nonsignatories may never enforce forum-selection clauses.  The only case they
cite for this proposition does not so hold.  See Mabon Ltd. v. Afri-Carib
Enters., Inc., 29 S.W.3d 291, 296 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  We reject this argument.





[11]  The Deep Water Parties assert in their petition,
among other things, that A[the Shell Parties] concealed from [the Deep Water
Parties] their intent to use fraudulent means knowingly and tortiously to
interfere with [the Deep Water Parties=]
rights and [the Shell Parties=] intention to
convert [the Deep Water Parties=] slender well
technology to [the Shell Parties=]
uses and profit.@  In another allegation in the same pleading, the Deep
Water Parties refer to A[the Shell Parties=]
fraud or fraudulent scheme, breaches of fiduciary duty, theft of trade secrets,
or other breaches of duty.@  The Deep
Water Parties also allege that the Shell Parties Aintended [the Deep Water Parties] to rely on their fraudulent
concealment to prevent [the Shell Parties=]
plan from being discovered.@





[12]  The Deep Water Parties also assert that the trial
court erred in sustaining various objections to portions of Wood=s affidavit.  However, even if this court considered
all of the evidence that the trial court struck in this regard, it would not
change this court=s analysis or judgment in this case.  Therefore, any
error in sustaining these objections is not reversible.