Lavern T. BUSSE and Jeff
Busse, Appellants,

v.

PACIFIC CATTLE FEEDING FUND
# 1, LTD., Appellee.

No. 06-94-00052-CV.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 8, 1994.

Decided March 14, 1995.

Rehearing Denied March 14, 1995.

James H. Baumgartner, Jr., David Reese, Vial, Hamilton, Koch & Knox, Dallas, for appellants.

Orrin L. Harrison, III, Vinson & Elkins, LLP, Eric R. Cromartie, Hughes & Luce, LLP, Thomas W. Mills, Jr., Mills Presby & Anderson, Dallas, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

OPINION

CORNELIUS, Chief Justice.

Lavern T. Busse and his son, Jeff Busse, appeal from an adverse judgment rendered in Pacific Cattle Feeding Fund's suit against them for damages resulting from Pacific's investment in a failed cattle marketing arrangement. Pacific sued the Busses, alleging Texas Securities Act and Deceptive Trade Practices Act violations, common law fraud, and breach of contract. The court rendered summary judgment for Pacific on the Securities Act claims. The jury found in Pacific's favor on the DTPA and fraud claims. The court directed verdicts for the Busses on Pacific's breach of contract claims.

Stan Bert formed the Pacific Cattle Corporation, of which he was president and sole shareholder, in September 1985. He formed the Pacific Cattle Feeding Fund # 1, here called "Pacific," as a Texas limited partnership with Pacific Cattle Corporation as general partner in 1986–87. Pacific began investing in cattle in October 1988.

Lean and Free, an Iowa corporation, was formed in September 1987 by twenty-five investors to take advantage of a process developed in England by which Holstein bulls fed a special diet purportedly produced beef low in saturated fat, calories, and cholesterol. Lean and Free encountered financial difficulties early, and by April or May of 1988, it approached Lavern Busse about providing capital. In December of 1988, Lavern Busse made Lean and Free a loan of $150,000, and in January 1989, he increased the loan to $243,000. In April 1989, Lean and Free approached Lavern Busse about additional monies. In response, Lavern increased the amount of his loan and converted the loan into common and preferred stock, making him the major stockholder.

Pacific alleged that Bert learned about Lean and Free in 1989 from Dean Freed of Ag Dimensions International (ADI), which was locating and managing livestock enrolled in the Lean and Free Program. ADI told Bert about Lavern Busse, and Bert and Lavern Busse met on October 23, 1989, at Lavern's office in Cedar Rapids, Iowa. Present

812

at the meeting were ADI principals and Mike Knipp, a Lean and Free manager. Lavern Busse already had bulls enrolled in the Lean and Free program under what were called finishing contracts. Bert testified that Lavern Busse assured him that there was more demand for Lean and Free beef than they could satisfy, that he needed to get more investors like Pacific so he could invest more of his money to increase inventory, that Lean and Free was building inventory so it could meet demand, that it had a contract with Amway to supply it with beef, and that he was carrying Lean and Free beef on his own menus at Bonanza steakhouses. At the close of the meeting, Lavern Busse told Bert that he should deal with ADI and that ADI would put together a group of Busse's bulls that Pacific could buy and place with Lean and Free for feeding.

After the meeting, Bert received through the mail at his Texas offices some Lean and Free advertising brochures that contained analyses of the rate of return investors would receive by investing in Lean and Free.

Bert testified that before he invested he learned that an ADI officer had been convicted of fraud involving cattle contracts. Steve Knutson, a banker at Norwest Bank in Iowa, called Bert to tell him that ADI's chief executive officer, Dennis Peterson, had served some time in prison. Bert then called Jeff Busse. Jeff Busse told Bert that they knew about Peterson's history but that controls were in place at ADI to protect investors. Bert and Jeff Busse had a second phone conversation in which they discussed the difficulties Pacific was having arranging financing at Norwest Bank for the bull purchase. Bert testified that Jeff Busse told him that if the financing did not come through, Lavern Busse would sell the bulls to other buyers. Bert testified that Jeff told him he would speak to Knutson at the bank to speed the matter along.

Pacific bought 1,362 cattle from Lavern Busse on January 25, 1990. Pacific simultaneously entered into feeding and finishing contracts with Lean and Free. The contracts provided that Pacific would pay for feeding the cattle, and once the cattle were ready for slaughter, Lean and Free would repurchase them at cost plus 12% interest, reimburse Pacific for its incurred feed costs, and pay Pacific $25 per head profit.

Lean and Free failed to find enough markets to support its operations. By April 1990, it had failed to repurchase Pacific's cattle, failed to reimburse Pacific for its feed costs, and failed to pay the $25 per head profit. On June 7, 1990, Lean and Free's directors allowed Lavern Busse, as its only secured creditor, to foreclose on the company's processed inventory and trade name. From June 1990 to January 1991, Pacific continued to feed its cattle and gradually sold them off.

Pacific filed suit against Lavern and Jeff Busse in August 1991. It alleged that the Busses knew Lean and Free was failing and that they sold the bulls to Pacific as part of a scheme to liquidate the inventory before the business went under.

The trial court granted partial summary judgment in favor of Pacific on its claims against Lavern Busse under the Texas Securities Act and granted the Busses a directed verdict on Pacific's breach of contract and alter ego claims. The other issues were submitted to a jury, which found in favor of Pacific, assessing actual damages, additional damages under the DTPA, and punitive damages under the common law fraud claims. The court entered judgment for Pacific on its DTPA claim, but reduced the additional damages by $405,000.

The Busses contend in their first point of error that the trial court erred in denying their motion to dismiss based on forum selection clauses in the feeding and finishing contracts.

Forum selection clauses are valid in Texas. *Greenwood v. Tillamook Country Smoker*, 857 S.W.2d 654, 657 (Tex.App.—Houston [1st Dist.] 1993, no writ). Parties are allowed to choose the forum in which to litigate their disputes. In this case, the feeding and finishing contracts between Pacific and Lean and Free contained the following clauses:

This agreement and the rights and obligations of the parties arising hereto shall be construed in accordance with the laws

of the State of Iowa, with venue in [certain Iowa counties].

A forum selection clause, however, does not apply to a tort action alleging that the plaintiff was induced by misrepresentations to enter into the contract, where construction of the rights and liabilities of the parties under the contract is not involved. *See Caton v. Leach Corp.*, 896 F.2d 939, 942–43 (5th Cir. 1990); *Pozero v. Alfa Travel, Inc.*, 856 S.W.2d 243, 245 (Tex.App.—San Antonio 1993, no writ). Where the wrongs arise from misrepresentations inducing a party to execute the contract and not from breach of the contract, remedies and limitations specified by the contract do not apply. *See Caton v. Leach Corp., supra; Decision Control Systems, Inc. v. Personnel Cost Control, Inc.*, 787 S.W.2d 98, 100–01 (Tex.App.—Dallas 1990, no writ).

■ This case does not involve an interpretation or construction of the contracts but rather the misrepresentations and fraud in the inducement to sign the contracts. The rights, obligations, and cause of action do not arise from the contracts but from the Deceptive Trade Practices Act, the Texas Securities Act, and the common law.

In *Pozero v. Alfa Travel, Inc.*, a couple purchased a cruise ticket and a ticket cancellation insurance policy. They sued the travel agent and the cruise line, as principal, when the cruise was canceled and the insurance refused to reimburse them. The ticket contract had a forum-selection clause setting California as forum for any lawsuit "arising out of or in any manner relating" to the contract. The court held that the DTPA action involved misrepresentations and non-disclosures leading to the ticket's purchase, not a construction of the ticket contract.

Likewise, in this case the causes of action are based on alleged fraud and deceptive practices that induced Pacific to enter into the contracts, not to interpret or enforce rights under the contracts. Moreover, the Busses were not even parties to the contracts. Although Pacific alleged that Lean and Free was Lavern Busse's alter ego, they failed to prove that allegation.

The Busses rely on *Barnette v. United Research Co.*, 823 S.W.2d 368 (Tex.App.—Dallas 1991, writ denied). That case, however, is distinguishable because there the issues arose from an employment contract and from the parties' employer-employee relationship that implicated the contract terms. Here, the fraud and misrepresentation allegations deal not with the terms of the contract, but predate the contract and deal with inducement to sign the contract. Similarly, the case of *Brock v. Entre Computer Centers, Inc.*, 740 F.Supp. 428 (E.D.Tex.1990), involved a provision that applied to "any action" and was not limited to actions arising under the contract itself. Moreover, the court in *Brock* was construing a federal venue statute not involved here.

For the reasons stated, we conclude that the contractual forum selection clauses do not control this suit.

The Busses also contend that the court erred in denying their motion for judgment notwithstanding the verdict as to Pacific's DTPA claim because Iowa law, not Texas law, applies to the transaction.

■ A choice of law question is subject to de novo review on appeal. *See, e.g., Huddy v. Fruehauf Corp.*, 953 F.2d 955, 956 (5th Cir.1992). When determining choice of law questions, a court will generally follow the statutory directives of its own state, subject to constitutional limitations. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(1) (1971). The Texas Deceptive Trade Practices Act will be liberally construed in order to protect consumers from false, misleading, and deceptive business practices and to provide efficient and economical procedures to secure such protection. TEX.BUS. & COM.CODE ANN. § 17.44 (Vernon 1987).

The Busses do not argue that the DTPA's reach is unconstitutionally broad. Here we have a Dallas-based partnership suing a Texas resident, Lavern Busse. Jeff Busse, an Iowa resident, has waived any jurisdictional complaint and has subjected himself to the jurisdiction of the Texas court. He does not raise the issue on appeal.

■ If the State Legislature intends for a statute to be applied to out-of-state facts, the courts will so apply it unless constitutional

limitations forbid it. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(1) cmt. b (1971). Application to out-of-state facts is permissible even when the local law of another state would be applicable under usual choice of law principles. *Id.*

■■■ Although the Texas DTPA does not explicitly provide or state an intention that it is to apply to out-of-state facts affecting Texas consumers, it is to be applied liberally to protect those citizens from false, misleading, and unconscionable acts, and it does not provide that its application will be limited to acts or practices occurring in Texas. Moreover, the DTPA's definition of "trade" and "commerce" includes the sale of any good or service "wherever situated" if the trade or commerce directly or indirectly affects the people of Texas. TEX.BUS. & COM.CODE ANN. § 17.45(6) (Vernon 1987); *Reed v. Israel Nat'l Oil Co.*, 681 S.W.2d 228 (Tex.App.— Houston [1st Dist.] 1984, no writ). As noted, here we have a Texas plaintiff who was solicited, in part, in Texas, suing a Texas resident and an Iowa resident. Even under a traditional choice of law analysis, Texas would have sufficient contacts to Pacific's claims so the application of Texas law would not be unreasonable or arbitrary. If construction of the Texas statute justifies the application of Texas rather than Iowa law, and that does not offend the constitution, it is not necessary to engage in the choice of law analysis based on the significant relationships set out in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971). *See, e.g., Siskind v. Villa Foundation for Education, Inc.*, 642 S.W.2d 434 (Tex.1982). If such an analysis is proper, we find that the record reveals sufficient significant relationships to justify the application of Texas law to the controversy here. Consequently, since it does not offend constitutional principles to apply Texas law in this case, we conclude that the trial court correctly refused to apply Iowa law.

The Busses also contend that the trial court erred in granting Pacific's motion for partial summary judgment on its Securities Act claims against Lavern Busse.

■■■ A movant is entitled to a summary judgment when it shows there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). In deciding whether a material fact issue precludes summary judgment, the court will take as true any evidence favoring the nonmovant and will resolve any doubts and every reasonable inference in the nonmovant's favor. *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex. 1985).

■■■ A person or corporation who offers or sells an unregistered security is liable to the buyer, who may sue for damages. TEX.REV.CIV.STAT.ANN. art. 581–33A(1) (Vernon Supp.1995). A person who directly or indirectly controls a seller or issuer of a security is liable jointly and severally under Section 33A with the seller or issuer and to the same extent as the seller or issuer. TEX. REV.CIV.STAT.ANN. art. 581–33F(1) (Vernon Supp.1995). An investment contract is a "security." TEX.REV.CIV.STAT.ANN. art. 581–4A (Vernon Supp.1995). An investment contract involves (1) a common enterprise in which a person (2) expects profits (3) solely from the efforts of the promoter or a third party. *Securities and Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *Russell v. French & Associates, Inc.*, 709 S.W.2d 312, 314 (Tex. App.—Texarkana 1986, writ ref'd n.r.e.). A security is exempt from registration if the sale is made without public solicitation or advertisement *and* the issuer sold its securities during the preceding twelve months to not more than fifteen persons who bought for their own account. TEX.REV.CIV.STAT.ANN. art. 581–5I (Vernon Supp.1995).

Pacific's summary judgment motion raised two grounds: (1) Lavern Busse sold unregistered securities to Pacific in violation of the Texas Securities Act, and (2) Lavern Busse and a corporation he controlled, Lean and Free, offered and sold securities to Pacific by means of untrue statements of material fact or misleading omissions of material fact or both, in violation of the Securities Act.

In the order granting partial summary judgment, the court found that (1) Lavern Busse was a control person for Lean and Free, (2) Pacific bought a security from Lean and Free that the Securities Act required to

be registered but was not registered, (3) the security was not exempt from the Act's registration requirements, (4) the sale was made through the use of materially misleading statements and omissions on which Pacific relied in purchasing the security, and (5) Lavern Busse was liable to Pacific for its damages as a result of Busse's violations of the Act.

Lavern Busse in his summary judgment response did not dispute that the securities were sold through the use of materially misleading statements and omissions, so he has waived that issue.

■■■ The Texas Securities Act does not require proof of scienter. *American General Ins. Co. v. Equitable General Corp.*, 493 F.Supp. 721 (E.D.Va.1980). If there was adequate summary judgment proof that Lean and Free sold an unregistered security that was not exempt from registration and that Lavern Busse was a control person, the summary judgment was proper.

■■■ That Lean and Free sold the finishing-and-feeding contracts is not disputed. On appeal the Busses argue that a fact question remains as to whether the contracts are a security. The Busses in their memorandum in opposition to Pacific's summary judgment motion argue that the contracts are "forwarding" contracts. They do not argue that the elements of the forwarding contracts are different from an investment contract. We conclude that the contracts meet the statutory and case-law requirements for an investment contract.

■■■ As to whether the securities were exempt, the summary judgment evidence shows that ADI sent to Pacific two brochures: "A Profile of AG Dimensions International, Inc." and "The Lean and Free Beef Challenge to White Meat." These constituted an advertisement and public solicitation. ADI was acting for Lean and Free in arranging sales for the cattle feeding operations. Whether ADI was Lavern Busse's agent or whether Lavern Busse knew of the brochures is irrelevant. The statute requires no scienter.

■■■ As to whether Lavern Busse was a "control person," that term in the Texas statute is used in the same broad sense as in the federal statute. TEX.REV.CIV.STAT.ANN. art. 581–33F cmt. (Vernon Supp.1995). Major shareholders, TEX.REV.CIV.STAT.ANN. art. 581–33F cmt., and directors, *Salit v. Stanley Works*, 802 F.Supp. 728, 734–35 (D.Conn. 1992), are control persons. As Lavern Busse was both the majority shareholder and a director, he was a control person within the meaning of the statutes.

As all the statutory elements required to show a violation of the Texas Securities Act were established by summary judgment evidence, summary judgment for Pacific on that issue was proper.

In their fourth point of error, the Busses complain because the court allowed Pacific's attorney to advise the jury of the court's ruling on Pacific's motion for partial summary judgment. They argue that this was an impermissible comment on the weight of the evidence.

■■■ Complaint about improper comment by counsel is waived unless objection is timely made. An objection is not timely made unless it is made at the earliest practical moment. *City of Corsicana v. Herod*, 768 S.W.2d 805, 815–16 (Tex.App.—Waco 1989, no writ). Failure to press for an instruction at the time of an allegedly erroneous jury argument operates as a waiver of any complaint which may be made as to the argument. *Fowler v. Garcia*, 687 S.W.2d 517, 520 (Tex.App.—San Antonio 1985, no writ). Where the record fails to show that a motion for mistrial directed to the argument of counsel was not overruled by the trial court, no error is preserved for review. *Biard Oil Co. v. St. Louis Southwestern Ry. Co.*, 522 S.W.2d 588, 590 (Tex.Civ.App.—Tyler 1975, no writ).

During discussions before the court and the jury in connection with a hearsay objection, Pacific's counsel said that the court had already determined that Lavern Busse was a control person for Lean and Free. The court had already decided that question with its ruling on Pacific's motion for partial summary judgment, but the jurors had not been told. The next day, the Busses' moved for a

mistrial on grounds that the statement improperly informed the jury of the court's prior ruling and that the statement implied that Lavern Busse was a wrongdoer. The court reserved its ruling on the motion.

If counsel's comment was error, the Busses waived their complaint because they failed to timely object. Although there is no bright-line rule to determine the timeliness of an objection, we conclude that an objection made the day following the objectionable event is not timely. Moreover, the Busses failed to request a curative instruction. Improper argument is rarely cause for a mistrial and usually can be cured by an instruction. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839–40 (Tex.1979). The Busses also failed to get a ruling on their mistrial motion, so their complaint was not preserved for review.

The Busses also allege error because the court admitted testimony and documentary evidence about statements made by employees of Lean and Free, Ag Dimensions International, and Norwest Bank. They urge that the statements were hearsay and were highly prejudicial. The Busses point to four pieces of evidence admitted over their objections. They are two pieces of Bert's testimony about what Dean Freed of ADI had told him about Lavern Busse; Bert's testimony about what Steve Knutson of Norwest Bank told him about Lavern Busse; and a brochure titled "Lean and Free Beef Challenge to White Meat."

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. TEX.R.CIV.EVID. 801(d). Evidence of an out-of-court statement is hearsay only if it is introduced to prove the truth of the matter asserted. *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160, 167 (Tex.1982).

The statements in question were not offered for the proof of the matter asserted. In fact, Pacific argued that they were false rather than true. They were offered only to show that they were made, as elements of the fraud Pacific was trying to prove, i.e., as operative facts. *See Williams v. Jennings,* 755 S.W.2d 874, 885 (Tex.App.—Houston

[14th Dist.] 1988, writ denied); *Yellow Freight System, Inc. v. North American Cabinet Corp.,* 670 S.W.2d 387, 390 (Tex. App.—Texarkana 1984, no writ). It was not error to admit the statements.

In their sixth point of error, the Busses contend that the trial court erred in overruling their motions for judgment notwithstanding the verdict and for new trial because there was no or insufficient evidence to support the jury's findings that they had committed fraud and engaged in deceptive acts.

In reviewing a no evidence point, the reviewing court considers only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding and disregards all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987).

In reviewing a factual insufficiency point, the appellate court first must examine all of the evidence, *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986), and having considered and weighed all the evidence, it will set aside the verdict only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The court apparently held that Iowa law controlled the common law fraud action. Neither side appeals that decision. Under Iowa law the elements of fraud are: a material misrepresentation; made knowingly; with intent to induce the plaintiff to act or refrain from acting; on which the plaintiff justifiably relies; with damages. *Beeck v. Kapalis,* 302 N.W.2d 90, 94 (Iowa 1981).

Bert testified that Lavern Busse made several misrepresentations: that the product demand was outstripping supply; that he was going to use the money he received from Pacific to purchase more bulls and increase the Lean and Free inventory; that he had contracts with certain buyers; and that he was personally committed to funding the project to success.

Jeff Busse directly reassured both Bert and the bank that the Busses had control over the activities of ADI and drew up the documents. He signed the contracts between Lean and Free and Pacific and prepared and signed the assignment documents covering Pacific's purchase of the bulls.

There was also evidence that the Busses failed to disclose these facts: (1) because the Lean and Free program was unproven, bulls had serious health problems, had damage to their digestive tracts, had high death loss, and had high disease rates; (2) the inventory being accumulated and carried at cost on the Lean and Free books had substantial problems and most of it was not salable; (3) demand for the product was not great because of its high cost, appearance, and taste; (4) Lean and Free had a going concern qualification on its most recent audited financial statements; (5) Lean and Free had low sales for years and the Busses had no reason to believe sales would improve; (6) Lavern Busse was not only Lean and Free's majority shareholder, but also its sole secured creditor with the ability to foreclose on its assets; (7) Lean and Free had neither the funds nor the prospect of funds based on past performance, present contracts, and future promises to pay for even a significant percentage of its existing obligations to investors; (8) Lavern Busse was reducing his unsecured exposure to Lean and Free by selling bulls to investors; and (9) Lavern Busse had no long-term commitment to Lean and Free, had threatened to cut off funds before the sale to Pacific, and was seeking a buyer for the company.

■ There is more than a scintilla of evidence to support the jury findings. We also find, after reviewing all the evidence, that it is factually sufficient to support the jury findings.

■ As to deceptive acts under the DTPA, a consumer may maintain an action where a false, misleading, or deceptive act or practice constitutes a producing cause of actual damages. Tex.Bus. & Com.Code Ann. § 17.50(a)(1) (Vernon 1987). A failure to disclose information about goods or services can be a deceptive act if the failure to disclose was intended to induce the consumer to enter into the transaction. Tex.Bus. & Com.Code Ann. § 17.46(b)(23) (Vernon Supp.1995); see Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 541 (Tex.1981).

■ The evidence shows that the Busses made misrepresentations that were a producing cause of Pacific's damages. Bert testified that when he investigated to find out why the bulls were not being slaughtered and why Pacific was not being paid in compliance with the contracts, the Busses told him they had a big order coming and that Pacific should continue to hold onto the bulls and continue feeding them. Bert also testified that Jeff Busse told him that Lavern Busse still believed in the program and was buying more cattle and putting them on feed. After Bert returned to Texas and sent a demand letter to the Busses, Jeff Busse responded with a letter asking for an additional ten days, until June 8, 1990, and made representations that a big order was supposed to come in. On June 7, 1990, Jeff Busse told the Lean and Free board that, because litigation was imminent, Lavern Busse was calling his note and foreclosing on the assets.

■ The Busses also say there is no evidence of damages to Pacific other than breach of contract damages, which cannot be recovered in a tort action for fraud. We find, though, that most of the damages Pacific sought and supported by evidence were tort-related. In addition to seeking the difference between the value as represented and received, it sought out-of-pocket expenses, loss of credit reputation, loss of time value, and loss to business reputation. While this kind of damage could result from a breach of contract, it can also result from fraudulent inducement to enter into a transaction. Pacific did not sue to enforce the contract.

We find the evidence to be both legally and factually sufficient to support the jury findings.

The next complaint is that the trial court erred in failing to submit a requested instruction on mitigation of damages and requested issues and instructions regarding whether Pacific disposed of the bulls in a

commercially reasonable manner and in good faith.

A party requesting a jury instruction must do three things to preserve error: (1) tender in writing and request the proper instruction before submission, (2) make a specific objection to its omission, and (3) obtain a ruling from the court. *Wright Way Construction Co. v. Harlingen Mall Co.,* 799 S.W.2d 415, 418–19 (Tex.App.—Corpus Christi 1990, writ denied). The Busses, although they tendered a proper jury instruction that the court rejected, failed to object at the charge conference, and so waived their complaint. If they preserved their complaint, they still failed to show that the failure to give the instruction probably caused the rendition of an improper verdict.

Complaint is also made that the court erred in submitting the definition of "exemplary damages" because the definition is an erroneous statement of the law and constituted an impermissible comment on the weight of the evidence.

The court gave the following definition:

"EXEMPLARY DAMAGES" are those damages which by law may be assessed against a really stupid defendant, or a really mean defendant, or a really stupid defendant who could have caused a great deal of harm by its actions but who actually caused minimal harm, where actual damages have been found, in order to make an example of such person or persons and to deter such conduct on their part in the future.

The Busses' attorney specifically objected to the reference to a stupid and mean defendant in the definition. The court then modified the instruction as to another portion. The Busses did not renew their objection after the court modified the instruction, so they waived any complaint. *Wright Way Construction Co. v. Harlingen Mall Co., supra.*

Although informing the jury that exemplary damages could only be imposed against a really stupid or really mean defendant departed from the correct standard and was improper, we do not find it to be reversible, even if error had been properly pre-

served. Indeed, the standard used by the court placed a more onerous burden of proof on Pacific than the proper standard. We cannot see that the instruction was harmful. The court did not say that the Busses were "stupid and mean," but only that such characteristics, *if found,* would justify the imposition of exemplary damages.

Pacific contends in its cross-point that the court erred in reducing its damages. It argues that it is entitled to $1,620,000 in damages under the DTPA rather than the $1,215,000 awarded by the trial court. The court awarded damages of $1,215,000, three times the jury's finding of actual damages, $405,000. The jury found additional damages under the DTPA of $729,000 against Lavern Busse and $486,000 against Jeff Busse, which together also total three times actual damages.

A consumer who prevails under the DTPA under a knowing violation may recover three times the first $1,000 of actual damages plus three times the actual damages in excess of $1,000. This is equal to a trebling of actual damages. TEX.BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1995); *Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239, 241 (Tex.1985).

Pacific argues it is entitled to $1,630,000 ($729,000 + $405,000 + $486,000), because damages allocated to Lavern Busse ($720,000 + $405,000 = $1,134,000) are under the $1,215,000 legislative cap and the damages allocated to Jeff Busse ($405,000 + $496,000 = $891,000) also are under the legislative cap.

It appears that the Legislature intended the treble damages to be a cap on the total damages recoverable in a DTPA action regardless of the number of defendants. *See Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d at 241; *Providence Hospital v. Truly,* 611 S.W.2d 127, 135 (Tex.Civ. App.—Waco 1980, writ dism'd). We agree with the authorities that suggest that this was the legislative intent and hold that the trial court correctly reduced the damages to the limit provided by the DTPA.

For the reasons stated, the judgment is in all things affirmed.