**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3178
_____

INA M. COLLINS,
On behalf of herself and all other similarly situated persons,

Appellant

v.

MARY KAY, INC.; ABC CORP.; JANE AND JOHN DOES,
the latter parties' names being currently unknown and
fictitious
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 15-cv-07129)
District Judge:  Honorable Madeline C. Arleo
_____

Argued: January 26, 2017

Before:  CHAGARES, RESTREPO, and ROTH, *Circuit
Judges.*

(Filed: October 19, 2017)

_____

RAVI SATTIRAJU, ESQ. [ARGUED]
The Sattiraju Law Firm
116 Village Boulevard
Princeton, NJ  08540
        *Counsel for Appellant*

CHRISTINE A. AMALFE, ESQ. [ARGUED]
STEVEN G. SANDERS, ESQ.
RICHARD S. ZACKIN, ESQ.
Gibbons P.C.
One Gateway Center
Newark, NJ  07102
        *Counsel for Appellee Mary Kay, Inc.*

_____

OPINION OF THE COURT
_____

RESTREPO, *Circuit Judge.*

Plaintiff-Appellant Ina M. Collins, who worked as a beauty consultant in New Jersey for Defendant-Appellee Mary Kay, Inc. brought this putative class action in the United States District Court for the District of New Jersey, claiming that certain Mary Kay policies and practices violated the New Jersey Wage Payment Law ("NJWPL").  Mary Kay moved to dismiss the suit on *forum non conveniens* grounds, relying on two written agreements that set forth terms and conditions of the parties' relationship.  Both agreements contained forum

selection clauses specifying that legal claims would be submitted to Texas state court. Both also contained choice-of-law clauses stating that Texas law would apply.

The District Court relied on federal common law in reaching its decision to grant Mary Kay's motion. On appeal, Collins argues that New Jersey law should govern the analysis. This case thus poses a layered choice-of-law question: what law governs the interpretation of a forum selection clause in a written agreement when that agreement also contains a choice-of-law clause? For the reasons that follow, we conclude that Texas law applies to the interpretation of the forum selection clause, and under Texas law, Collins' claim belongs in Texas state court. Therefore, we will affirm the District Court's dismissal of this action on *forum non conveniens* grounds.

## I

Mary Kay is a Texas-based company that sells cosmetics to customers via beauty consultants. Collins is a New Jersey resident who worked as a Mary Kay beauty consultant in New Jersey in a few capacities, including "Independent Sales Consultant" and "Independent Sales Director." App. 27 ¶ **7**. The putative class consists of individuals who are New Jersey residents and have worked as Mary Kay beauty consultants, in a variety of titles, from September 2009 to the present.

Collins and Mary Kay entered into two written agreements (collectively, "Agreements") that set forth the general terms and conditions of their relationship: an "Independent Beauty Consultant Agreement" and an

"Independent Sales Director Agreement."[1]  App. 15-25.  The Agreements contained substantively identical forum selection clauses:

> The parties further agree that if any dispute or controversy arises between them concerning any matter relating to this Agreement that any issues which either party may elect to submit for legal jurisdiction shall be submitted to the jurisdiction of the courts of the State of Texas and the parties agree that the proper venue shall be Dallas, Dallas County, Texas.

App. 16; *see also* App. 23.

In addition to the forum selection clauses included in the Agreements, each contained a choice-of-law clause that specified Texas law would apply to disputes.  In the "Independent Beauty Consultant Agreement," the choice-of-law clause states, "This Agreement shall be governed by the laws of the State of Texas as to all matters."  App. 16.  The choice-of-law clause in the Independent Sales Director Agreement differs only slightly, stating the "Agreement . . . shall be governed by the laws of the State of Texas as to all matters, including but not limited to matters of validity,

---

[1] There is no dispute between the parties regarding the applicability of these agreements during the relevant time period.

construction, effect and performance." App. 23.

Collins filed her putative class action complaint in September 2015 in the United States District Court for the District of New Jersey, invoking the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. The complaint contained one count, a violation of the NJWPL, N.J. Stat. 34:11-4.1, *et seq*. Collins alleged in her complaint that Mary Kay misclassified her and the putative class members as independent contractors, rather than employees, under the standards of the NJWPL. Collins further alleged that Mary Kay unlawfully required consultants to divert wages by mandating that they purchase Mary Kay marketing materials, uniforms, and a minimum quota of products in order to maintain their titles as consultants. These practices, according to Collins, violated the NJWPL.

In November 2015, Mary Kay moved to dismiss Collins' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and on *forum non conveniens* grounds. In support of its *forum non conveniens* argument, Mary Kay pointed to the forum selection clauses included in the Agreements and contended that the only proper forum for Collins' claim was Texas state court. In June 2016, the District Court granted Mary Kay's motion and dismissed the complaint on *forum non conveniens* grounds, finding that Texas was the appropriate forum under the terms of the forum selection clause. This appeal followed.

## II

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction over the final order of the District Court pursuant to 28 U.S.C. § 1291.

The standard of review that we must apply to a district court's dismissal on *forum non conveniens* grounds is unsettled after the Supreme Court's 2013 decision in *Atlantic Marine Construction Co. v. U.S. District Court for the Western Dist. of Texas*, 134 S. Ct. 568 (2013), as several circuit courts have recognized in recent opinions. *See, e.g.*, *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766-68 (5th Cir. 2016); *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). *Atlantic Marine* clarified that *forum non conveniens* is the proper mechanism for enforcing a forum selection clause that points to a state or foreign forum. *Atlantic Marine*, 134 S. Ct. at 580. *Atlantic Marine* did not address, however, what standard of review an appellate court should use when considering a district court's *forum non conveniens* dismissal. Nevertheless, we need not resolve that issue here, because even under the least deferential *de novo* standard, the District Court's decision to dismiss this case on *forum non conveniens* grounds must be affirmed.

## III

### A

Collins centers her appeal on the proper interpretation of the Agreements' forum selection clauses. Specifically, she argued in her opening brief that we should reverse the District Court's dismissal because her claim is outside the scope of the

6

forum selection clause included in the Agreements.[2]  A court considering the interpretation of a forum selection clause applies principles of contract law to determine the scope of the clause.  *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997) (noting that "[t]he question of the scope of a forum selection clause is one of contract interpretation").  In other words, it decides "whether the claims and parties involved in the suit are subject" to the clause.  *Martinez*, 740 F.3d at 217 (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).

The interpretation of a forum selection clause is an analytically distinct concept from the enforceability of that clause.  *Weber*, 811 F.3d at 770; *see also Martinez*, 740 F.3d at 217.  A court examining the enforceability of a clause considers whether compelling compliance with the clause is "'unreasonable' under the circumstances."  *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)); *Weber*, 811 F.3d at 773-75; *see also Martinez*, 740

---

[2] Plaintiff reiterated in her reply brief and at oral argument that her focus was on the scope of the clause, not its enforceability. Appellant's Reply Br. 1 (summarizing her argument as "[Collins's] statutory employment claim under the [NJWPL] is not within the scope of the forum selection clause . . . on which the District Court based the dismissal"); Oral Arg. at 1:20 (explaining "what we're arguing is that . . . this statutory matter falls outside the scope of the forum selection clause"). Likewise, in her briefing before the District Court in opposition to Mary Kay's motion to dismiss, Collins focused on the scope of the clause, not its enforceability.

7

F.3d at 217-19. Collins has not raised as an issue in this appeal the enforceability of the Agreements' forum selection clauses. Collins does not suggest, for instance, that Mary Kay "obtained [her] accession to the forum clause by fraud or overreaching." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *accord M/S Bremen*, 407 U.S. at 15; *Foster*, 933 F.2d at 1219. Nor does she argue that litigating her wage claim in Texas "will be so gravely difficult and inconvenient that [s]he will for all practical purposes be deprived of h[er] day in court." *M/S Bremen*, 407 U.S. at 18. And she has not outlined how enforcement of the forum selection clauses would "contravene a strong public policy" of New Jersey. *Id.* at 15.

Our review focuses accordingly on the clauses' scope.

**B**

Before we can determine the scope of the forum selection clauses in the Agreements, we must establish what body of law should govern our interpretation. Under the familiar doctrine of *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938), federal courts sitting in diversity jurisdiction apply state law to substantive issues and federal law to procedural issues. Here, the District Court applied federal law to its entire analysis, reasoning that questions of venue are procedural rather than substantive in nature. But in selecting this body of law, the District Court did not draw any distinction between questions of the clauses' enforceability and questions of interpretation.

Applying federal law to questions of enforceability of forum selection clauses comports with settled law in this

Circuit.[3] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). Doing so "ensure[s] that federal courts account for both the important interests served by forum selection clauses and the strong public policies that might require federal courts to override such clauses." *Martinez*, 740 F.3d at 220. Further, it "accords with the traditional divide between procedural and substantive rules developed under *Erie*." *Id.* at 221. The same cannot be said for interpretation questions, however.

Issues of contract interpretation are considered "quintessentially substantive," rather than procedural, under *Erie*. *Id.*; *cf. Beazer E., Inc. v. Mead Corp.*, 34 F.3d 206, 212 (3d Cir. 1994) (the "interpretation of a private contract is generally thought to be a question of state law," rather than federal common law).[4] Therefore, as a general rule in diversity

---

[3] The majority of our sister circuits also apply federal law when deciding whether to enforce a forum selection clause. *See Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010); *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 826-28 (6th Cir. 2009); *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 538 (8th Cir. 2009); *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008); *Phillips*, 494 F.3d at 384; *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988); 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3803.1 n.105 (collecting cases).

[4] *See also In re County of Orange*, 784 F.3d 520, 530 (9th Cir. 2015) ("[R]ules of contract interpretation and construction are plainly substantive under *Erie*."); *Eaton v.*

cases, courts should apply state contract law to decide interpretation questions. Courts may deviate from this general rule and apply federal common law to contract interpretation questions only in certain "'restricted' areas," including where there are "uniquely federal interests" at stake, and where Congress has delegated power to the federal courts to develop substantive law on a particular subject. *Martinez*, 740 F.3d at 221-22 (quoting *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981)); *Miree v. DeKalb Cty.*, 433 U.S. 25, 29-31 (1977); *Wheeldin v. Wheeler*, 373 U.S. 647, 651-52 (1963). Here, the Agreements at issue – contracts between two purely private parties that set forth the terms and conditions of their relationship and do not implicate any federal interests – most certainly fall outside of these "restricted areas."

The Second and Fifth Circuits, in recent opinions, explored the question of whether federal common law should apply to forum selection clause interpretation, as is the practice for questions of enforceability. *Weber*, 811 F.3d at 770-71; *Martinez*, 740 F.3d at 222-25. Both concluded that federal law should not apply. *Weber*, 811 F.3d at 770-71; *Martinez*, 740

---

*Penn-America Ins. Co.*, 626 F.3d 113, 114 (1st Cir. 2010) (noting that state law "supplie[d] the substantive rules of decision . . . relating to interpretation of the insurance [agreement]" at issue); *Coplay Cement Co. v. Willis & Paul Grp.*, 983 F.2d 1435, 1438 (7th Cir. 1993) (explaining that rules of contract interpretation are "considered substantive under the *Erie* doctrine . . . because . . . they are concerned primarily with the channeling of behavior outside the courtroom . . . rather than with the allocation of responsibilities among judicial decision-makers" (internal quotation marks and citations omitted)).

F.3d at 224. Although it was not a diversity case, the Second Circuit nevertheless explained in *Martinez* why applying federal common law to interpret a forum selection clause frustrates the principles of *Erie*. "[C]onstruing a forum selection clause," the court reasoned, may involve "a wide range of contract law issues, from the treatment of ambiguous phrases . . . to the admissibility of parol evidence . . . to successorship and the rights of third-party beneficiaries." *Martinez*, 740 F.3d at 221 (citations omitted). Applying federal common law to these issues would "generate a sprawling 'federal general common law' of contracts," which the Supreme Court in *Erie* advised courts to avoid. *Id.* Applying state contract law to these issues eliminates this *Erie* problem.

Our precedent stands in harmony with this approach. In *Jumara v. State Farm Insurance Co.*, we stated broadly that "[b]ecause '[q]uestions of venue and the *enforcement* of forum selection clauses are essentially procedural, rather than substantive, in nature,' . . . federal law applies in diversity cases." *Jumara*, 55 F.3d at 877 (quoting *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1991) (emphasis added)). But our analysis in *Jumara* focused on the enforceability of the forum selection clause. *Id.* Further, the Second Circuit's opinion in *Jones*, upon which we relied in *Jumara*, dealt exclusively with enforceability. To the extent we addressed clause interpretation in *Jumara*, we did not explicitly note what body of law applied, and we cited sparingly in our interpretation discussion to both state and federal law. *Id.* at 880-82.

Unlike *Jumara*, our subsequent decision in *John Wyeth & Brother Ltd. v. CIGNA International Corp.* focused on forum selection clause interpretation. 119 F.3d at 1073-74.

11

But because the parties did not appear to dispute which body of law governed the interpretation, we simply applied "general contract law principles" to determine that the clause encompassed the plaintiff's claim. *Id.* at 1074. More recently, in *Carlyle Investment Management LLC v. Moonmouth Co. SA*, 779 F.3d 214 (3d Cir. 2015), we referenced both Delaware state law and federal law when interpreting the scope of the forum selection clause at issue, without explicitly addressing which law controlled. *Id.* at 220-21.

In sum, we find no reason under this Circuit's precedent or the *Erie* doctrine to apply federal common law to interpret the forum selection clauses in the Agreements here. Accordingly, we will apply state contract law to assess the scope of the clauses and decide whether they encompass Collins' NJWPL claim.

## C

### 1

Having established that state contract law, rather than federal common law, governs the interpretation of the forum selection clauses here, we must now determine which state's contract law applies. In diversity cases such as this one, we look to the choice-of-law rules of the forum state – the state in which the District Court sits – in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a federal court sitting in diversity must apply the choice-of-law rules of the forum state); *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (applying Pennsylvania's

12

choice-of-law rules in diversity case, despite the presence of choice-of-law clause selecting Illinois law, and concluding that Illinois law governs interpretation of indemnity clause of a lease agreement); *see also Weber*, 811 F.3d at 770-71 (explaining that "the presence or absence of a specific choice-of-law clause does not alter the core obligation of a federal court, sitting in diversity, to ascertain which body of substantive law to apply by implementing the choice-of-law rules of its home jurisdiction"); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016); *H & R Block Tax Servs. LLC v. Franklin*, 691 F.3d 941, 943 (8th Cir. 2012); *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 623-24 (4th Cir. 1999); *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1184-85 (7th Cir. 1996).[5]

We thus turn to New Jersey choice-of-law rules to determine what state's substantive contract law governs the interpretation of the Agreements' forum selection clauses, since this diversity action originated in a New Jersey federal district court. New Jersey choice-of-law rules provide that "[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice." *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992) (citing Restatement (Second) of Conflicts of Laws § 187 (Am.

---

[5] In *Martinez*, the Second Circuit held that the law selected in the relevant agreement's choice-of-law clause applied to interpret the forum selection clause, without conducting a choice-of-law analysis. *Martinez*, 740 F.3d at 220. But *Martinez* was not a diversity case; it was a federal question case in which the relevant agreement invoked international law.

Law Inst. 1969) ("Restatement")). This rule honoring the parties' selected law serves the "[p]rime objectives of contract law . . . to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract." Restatement § 187 cmt. e. Eliminating uncertainties about which law governs may be particularly critical where, as here, the parties reside in and perform their contractual obligations in different jurisdictions. A court should not depart from this rule and "refrain from applying the [parties'] chosen law merely because this would lead to a different result than would be obtained under the . . . law" of the forum state. *Id.* § 187 cmt. g.

Parties' freedom to choose the law applicable to their agreements is not without boundaries in New Jersey law. New Jersey looks to Restatement § 187 to determine under what circumstances a choice-of-law clause will *not* be respected. *Instructional Sys.*, 614 A.2d at 133. Specifically, the Restatement provides that the parties' contractual choice will not govern if:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular

14

> issue and which . . . would be the
> state of the applicable law in the
> absence of an effective choice of
> law by the parties.

*Id.* (quoting Restatement § 187(2)).  In essence then, the law specified in the Agreements – Texas law – should control the interpretation of the forum selection clause unless the choice-of-law clause itself is unenforceable in this context.

Collins has not demonstrated that either of the two exceptions outlined in Restatement § 187(2) should apply. There is no dispute that the parties have a substantial relationship to the state of Texas.[6]  Further, Collins has not shown why New Jersey has a "materially greater interest" in the application of its own contract law to the interpretation of the forum selection clauses, or how the application of Texas contract law to interpret the scope of the forum selection clauses would offend the "fundamental policy" of New Jersey.[7]

---

[6] Any dispute by Collins on this point would have been unavailing, as Mary Kay is headquartered in Texas. *Instructional Sys.*, 614 A.2d at 133 (finding that since one of the parties, a Delaware corporation, was headquartered in California, California law had a substantial relationship to the parties); *see also* Restatement § 187, cmt. f (noting that a "substantial relationship" will be found "where one of the parties . . . has [its] principal place of business" in the "state of the chosen law").

[7] Despite the presence of the choice-of-law clauses in the Agreements in this case, Collins did not address Texas substantive law in her briefing to the District Court or in her

15

Accordingly, we will apply Texas contract law to interpret the scope of the forum selection clause in the Agreements.

**2**

Under Texas contract law, the Agreements' forum selection clauses encompass Collins' wage claim. As noted above, the forum selection clauses in the Agreements provided that "if any dispute or controversy arises between [the parties] concerning any matter *relating to this Agreement*," the case must be filed in Texas state court.[8] App. 16, 23 (emphasis added). Collins argues that because her claim is not for breach of contract, it is not within the scope of the forum selection clauses. Yet Collins concedes in her supplemental briefing that

opening brief to this Court. In response to this Court's request for supplemental briefing on the applicability of Texas law, Collins again did not address whether and how the application of Texas law to interpret the forum selection clause would offend fundamental New Jersey policy. Collins cursorily states in her reply brief that the Agreements' choice-of-law clauses should be invalidated because they fail to include an unambiguous waiver of statutory claims like her NJWPL claim. At this stage of the analysis, however, the "particular issue" of concern is not whether the choice-of-law clause should apply to Collins' underlying wage claim, but whether it applies to the interpretation of the forum selection clause. *See* Restatement § 187(2)(b).

[8] There is no dispute in this case that the Agreements' forum selection clauses were mandatory in effect, *requiring* parties to bring the claims in Texas state court, rather than just permissive. *See Phillips*, 494 F.3d at 383-84.

16

courts applying Texas law "interpret forum selection clauses covering claims 'relating to' an agreement as broad in scope." Appellant's Supp. Br. 4; *see also In re Longoria*, 470 S.W.3d 616, 628 (Tex. App. 2015) (collecting relevant cases and noting that "courts have consistently held the language '*any interpretation, dispute, or any aspect related to*' is broad"); *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 701-02 (Tex. App. 2010) (finding that where a forum selection clause covers claims that "relate to" an agreement, it "encompass[es] all claims that have some possible relationship with the agreement" or some "connection with" the agreement (citations omitted)). Collins has not cited to authority applying Texas law to exclude wage claims from a forum selection clause of comparable breadth to the clauses here.

Indeed, courts applying Texas law have held that forum selection clauses with broad language, like that used in the Agreements, encompass a variety of non-contractual claims, including statutory claims. For instance, in *Barnette v. United Research Co.*, 823 S.W.2d 368 (Tex. App. 1991), a Texas court held that a forum selection clause included within an employment agreement applied to claims of age discrimination, since the claim arose out of the employment relationship between the parties and implicated the terms of the agreements. *Id.* at 369-70 (citing *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988)). In *Accelerated Christian Education, Inc. v. Oracle Corp.*, 925 S.W.2d 66 (Tex. App. 1996), *overruled in part on other grounds*, *In re Tyco Elecs. Power Sys., Inc.*, 2005 WL 237232, at *4 & n.1 (Tex. App. 2005), another Texas court held that the plaintiff's claim for violation of state consumer protection statutes, among others, was within the scope of a forum selection clause that, by its terms, encompassed claims

17

"relating to" software licensing and service agreements. *Id.* at 71-72. Likewise, in *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258 (Tex. App. 2010), a court held that the forum selection clause covering claims "arising under or relating to" a stock purchase agreement applied to claims for violations of the state securities act and state consumer protection law. *Id.* at 263.

By contrast, in *Busse v. Pacific Cattle Feeding Fund #1, Ltd.*, 896 S.W.2d 807 (Tex. App. 1995), the court held that the forum selection clause in the agreement did *not* encompass the plaintiff's tort claim for fraudulent inducement. *Id.* at 812-13. The clause language in *Busse* differed from that in *Accelerated* and *Young*; it stated that it applied only to the "agreement and the rights and obligations of the parties arising hereto." *Id.* at 812-13. Thus, the court's narrow interpretation of the clause in *Busse* to exclude the plaintiff's tort claim could be explained by the specific language chosen by the parties that limited its application to claims arising under the contract itself. *See id.* In sum, the applicability of a forum selection clause to a plaintiff's statutory claims "d[oes] not turn on the presence of contractual claims," but rather turns on "the language of the particular forum selection clause to which the parties agreed." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2002 WL 418206, at *2 (Tex. App. 2002).

Like the age discrimination claim in *Barnette*, Collins' wage claim "relates to" her working relationship with Mary Kay and thus implicates the contents of the Agreements. The Agreements establish the relationship between Collins and Mary Kay and outline its terms and conditions. While the Agreements themselves are not determinative of whether Collins qualifies as an "employee" afforded wage law

18

protection or an unprotected "independent contractor," the Agreements will be relevant to understanding the contours of the parties' affiliation. Further, the Agreements touch on consultants' purchases from the company, a key issue in Collins' sole claim: that Mary Kay mandated certain prohibited payments from its beauty consultants. In the absence of authority suggesting that Texas law would interpret this broad forum selection clause to exclude Collins' wage claim, we hold her claim falls within its scope.

## D

Having concluded that Collins's claim falls within the scope of the Agreements' enforceable forum selection clauses, we turn finally to the District Court's application of the *forum non conveniens* framework, as modified by the Supreme Court in *Atlantic Marine.* As the District Court outlined, in this Circuit, four factors normally guide a district court's application of the doctrine of *forum non conveniens* in the absence of a forum selection clause:

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum.

19

*Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (quoting *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189-90 (3d Cir. 2008)). *Atlantic Marine* instructs that a forum selection clause alters this analysis in several ways. Relevant here, a plaintiff's choice of forum in filing his or her lawsuit "merits no weight," and we are not to consider any arguments about the parties' private interests – those "weigh entirely in favor of the preselected [Texas] forum." *Atlantic Marine*, 134 S. Ct. at 581-82. So then, all we are to consider are the second and fourth factors, which *Atlantic Marine* advises will overcome a forum selection clause in only the most "unusual" and "extraordinary" circumstances. *Id.*

Collins has not disputed the availability of another forum to hear her claim. Nor has she addressed with any specificity the public interest factors that could favor litigation in New Jersey federal court over Texas state court.[9] As the

---

[9] These "[p]ublic-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atlantic Marine*, 134 S. Ct. at 581 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)); *see also In re Howmedica Osteonics Corp*, 867 F.3d 390, 402 n.7 (3d Cir. 2017) ("[W]e clarify that 'practical problems that make trial of a case easy, expeditious, and inexpensive' represent a private interest, as the Supreme Court stated in *Atlantic Marine*, and as we have often stated in the *forum non conveniens* context, [] we acknowledge judicial economy considerations to be a distinct, cognizable public interest." (citations omitted)).

party resisting the application of a forum selection clause, Collins bears a heavy burden under *Atlantic Marine*. *Id.* at 582. She has failed to carry that burden in this case. Therefore, the District Court correctly granted Mary Kay's motion and dismissed this action on *forum non conveniens* grounds.

We are mindful of the predicament that could arise for a plaintiff who (a) performs work in her home state for a company headquartered in another state, (b) seeks the substantive protections guaranteed by her home state's wage payment law; and (c) is subject to forum selection and choice-of-law clauses in her employment agreement that point outside of her home state. But it is incumbent on plaintiffs in those situations to challenge the enforceability of the forum selection clauses and to outline for the lower court exactly how they stand to be deprived of the wage payment protections they are otherwise guaranteed. Collins made no attempt to do so in this case.

## IV

For the foregoing reasons, we will affirm the decision of the District Court to dismiss this action on *forum non conveniens* grounds.

21